# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and<br><br>OFFICE OF THE ATTORNEY GENERAL,<br>STATE OF FLORIDA,<br>DEPARTMENT OF LEGAL AFFAIRS,<br><br>      Plaintiffs,<br><br>      v.<br><br>TREASHONNA P. GRAHAM, a/k/a SHONNA GRAHAM, a/k/a TREASHONNA LEE WILLIAMS, a/k/a SHONNA LEE WILLIAMS, also d/b/a The GRANT BAE, GRANT BAE, and GRANT BAE CONSULTING AND MORE, individually and as a member, manager, or owner of C LEE ENTERPRISES LLC, and<br><br>C LEE ENTEPRISES LLC, a Florida limited liability company, also d/b/a GRANT BAE and GRANT BAE CONSULTING AND MORE,<br><br>      Defendants. | Case No. 3:22cv655 MMH-JBT<br><br>**COMPLAINT FOR PERMANENT INJUNCTION, MONETARY RELIEF, AND OTHER RELIEF** |

2022 JUN 13  AM 9: 30
CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA
FILED

Plaintiffs, the Federal Trade Commission ("FTC"), and the Office of the Attorney General, State of Florida, Department of Legal Affairs ("Florida Attorney General") for their Complaint allege:

1.      The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and Section 1401(c)(1) of the COVID-19 Consumer Protection Act of the 2021 Consolidated Appropriations Act, Pub. L. No. 116-260, 134 Stat. 1182, Title XIV, § 1401(c)(1), 15 U.S.C. § 45 note (Prohibiting Deceptive Acts or Practices in Connection With the Novel Coronavirus ("CCPA") § 1401(c)(1)) ("COVID-19 Consumer Protection Act" or "CCPA"), which authorizes the FTC to seek, and the Court to order, temporary, preliminary, and permanent injunctive relief, an asset freeze, the appointment of a receiver, immediate access to the Defendants' business premises and documents, an accounting of assets, monetary relief, and other relief, for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and Section 1401(b)(2) of the CCPA.

2.      The Florida Attorney General brings this action under the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes ("FDUTPA"), which authorizes the Florida Attorney General to seek, and the Court to order, permanent injunctive relief, recission or reformation of contracts, consumer restitution, the refund of monies paid, disgorgement of ill-gotten monies, attorneys' fees, the appointment of a receiver, civil penalties and other equitable relief for Defendants' acts or practices in violation of FDUTPA. The Florida Attorney General

2

has conducted an investigation and all conditions precedent to filing as required by Section 501.207(2), Florida Statutes, have been satisfied.

## SUMMARY OF CASE

3.      Defendants C Lee Enterprises LLC ("Grant Bae") and its owner Treashonna P. Graham induce struggling minority-owned small businesses to use Grant Bae's grant writing and business consulting services by falsely representing to these businesses that they will receive guaranteed funding as the result of retaining Defendants' services.

4.      While Defendants represent to these businesses that Grant Bae's mission is to assist them in obtaining capital through Defendants' grant writing services, Grant Bae's true purpose is to enrich Defendants at the expense of unsuspecting business owners.

5.      Grant Bae takes large fees, sometimes of more than $5,000, from minority-owned small business owners in exchange for false promises of guaranteed grant funding.

6.      However, rather than obtaining funding on behalf of these businesses as promised, Defendants leave countless minority-owned small business owners without the money they paid for Grant Bae's illusory grant writing and business consulting services and the capital they were guaranteed.

7.     Moreover, Grant Bae, started with seed money from wrongfully acquired COVID-19 relief funds, represented to consumers that it would secure for them government funds designed for small businesses impacted by COVID-19.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

9.     This Court has supplemental jurisdiction over the Florida Attorney General's claims pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (b)(2), (c)(1), (c)(2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFFS

11.     The FTC is an independent agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own attorneys. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the COVID-19 Consumer Protection Act, 15 U.S.C. § 45 note (CCPA § 1401), which prohibits, among other things, deceptive acts or practices associated with a government benefit related to COVID-19 for the duration of the COVID-19 public health emergency.

4

12.     The Florida Attorney General is an enforcing authority under the FDUTPA, Section 501.203(2), Florida Statutes, and is authorized to pursue this action to enjoin violations of the FDUTPA and to obtain equitable or other appropriate relief, including recission or reformation of contracts, consumer restitution, the appointment of a receiver, the refund of monies paid, disgorgement of ill-gotten monies, or any other appropriate relief pursuant to Section 501.207, Florida Statutes.

## DEFENDANTS

13.     Defendant C Lee Enterprises LLC, also doing business as Grant Bae and Grant Bae Consulting and More, is a Florida limited liability company with its principal place of business at 129 N.E. Fryer St., Lake City, Florida 32055. Defendant C Lee Enterprises LLC transacts or has transacted business in this District and throughout the United States. C Lee Enterprises LLC and its d/b/a Grant Bae and Grant Bae Consulting and More are also associated with the address, 2172 S.E. Baya Ave, Lake City, Florida, 32055, which at times includes the suite number 103.

14.     Defendant Treashonna P. Graham, a/k/a Shonna Graham, a/k/a Treashonna Lee Williams, a/k/a Shonna Lee Williams, also d/b/a The Grant Bae and Grant Bae Consulting and More is the managing member of Defendant C Lee Enterprises LLC, which also does business as Grant Bae and Grant Bae Consulting

and More. At all times relevant to this Complaint, acting alone or in concert with others, she has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant C Lee Enterprises LLC, also d/b/a/ Grant Bae and Grant Bae Consulting and More, including the acts and practices set forth in this Complaint. Defendant Graham resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

## COMMERCE

15.   At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44 and as "trade or commerce" is defined in Florida Statutes Section 501.203(8).

## DEFENDANTS' BUSINESS ACTIVITIES

16.   Since at least October of 2020, Defendants C Lee Enterprises LLC and Treashonna Graham, who refers to herself as "The Grant Bae," have marketed grant writing and consulting services to minority-owned small businesses through the Grant Bae brand.

17.   Grant Bae operates through a call center and a multifaceted online presence, including its website www.GrantBae.com, and presence on social media

sites, including Facebook, Instagram, and the audio-based platform Clubhouse. Defendants use these and other methods to communicate their claims to the public.

18.     Grant Bae markets two types of services: (1) securing grant funding for small businesses; and (2) business consulting to help grow small businesses.

19.     Grant Bae claims its services are "designed to help minority small businesses eliminate the stress and headache of running a small business with the lack of capital."

20.     In reality, Grant Bae causes minority business owners to lose time and money.

### *Defendants' Deceptive Claims of Business and Grant Writing Expertise*

21.     Defendant Graham holds herself out as an expert in securing grants for minority-owned small businesses.

22.     Defendant Graham uses her personal story to highlight this expertise, claiming that "After 10+ years as an entrepreneur and even with collateral the banks always said NO to funding for the expansion of my businesses. So I hit the ground running and begin [*sic*] my research for applying for grants." Defendant Graham represents that she has "been mastering this 'gift' for the past 8 years."

23.     Defendant Graham promotes her supposed experience and expertise on various forums designed to reach minority business owners. For example, Graham

promoted herself and Grant Bae's services at empowerment meetings held following the death of George Floyd, on Black news and media outlets like BlackNews.com, and on minority business affinity groups on social media, such as Black Girls in Real Estate on Facebook.

24.     Defendant Graham also associates herself and her services with influential figures in the entrepreneurship and entertainment world and has appeared in Clubhouse rooms with author and entrepreneur Grant Cardone and marketing coach "CEO Matty J." Graham additionally sat for an interview with Jason Lee of Hollywood Unlocked and collaborated on a "how to" article with Hello Alice.

25.     Contrary to Defendant Graham's false claims, she does not have 8 years of experience developing the "gift" of grant writing. In fact, she has little to no experience either writing grant applications or securing grant money.

26.     Further, Graham's last known employment was in late 2018 at a Krystal fast-food restaurant, and she pled guilty to two felony counts of theft as a result of stealing cash deposits from the restaurant. In January 2021, Graham began a three-year term of probation for these offenses.

27.     On June 30, 2020, Defendant Graham filed Articles of Organization to establish Defendant C Lee Enterprises. Less than a month later, on July 22, 2020, C Lee Enterprises was approved for a forgivable $8,013 loan under the Paycheck

8

Protection Program ("PPP"), a government benefit designed to stabilize the payroll of businesses impacted by COVID-19. Graham was the sole employee of the company at the time.

28.     On August 5, 2020, Graham individually was approved for a $22,990 PPP loan as an "independent contractor."

29.     Using the PPP loans, Defendants set up Grant Bae to deceptively market grant writing and consulting services, inducing nearly 100 minority-owned businesses to pay her thousands of dollars within just months.

30.     Defendant Graham later claimed to have over 8,200 clients by the end of calendar year 2021.

31.     Defendants' deceptive grant writing and consulting services were in large part funded through the proceeds of these PPP loans.

### *Defendants Misrepresent Expected Results of Their Grant Writing Scheme to Consumers*

32.     To entice small business owners to sign up for Grant Bae's grant writing service, Defendants make numerous false claims regarding the likelihood consumers will receive grant funding.

33.     For example, Defendants represent that *any* minority-owned business qualifies for grant funding of at least $25,000.

9

34. Defendants also "guarantee" consumers will receive a minimum amount of grant funding based upon the package chosen and after they make an upfront payment.

35. The amount of the upfront fee and resulting "guaranteed" grant funding has changed over time. Most recently, Defendants guarantee the "Basic" package costing $1,799 will yield at least $25,000 in grant funds; the "Standard" package costing $2,699 will yield at least $50,000 in grant funds; the "Premium" package costing $4,499 will yield at least $100,000 in grant funds; and the "Elite" package costing $6,999 will yield at least $250,000 in grant funds.

36. Grant Bae guarantees consumers would receive at least four grants over the course of one year.

37. Defendant Graham also claims some consumers receive larger than expected grant proceeds, for instance stating, "You got people who sign up for the program for the $25,000 package and they are getting $120,000," or "I have people sign up for the $250,000 package, and they are almost at, you know, a half a million dollars in grant funding."

38. On her Instagram page, Defendant Graham told consumers Grant Bae secured $32 million in funding during the three months preceding August 24, 2021, secured $75 million during calendar year 2021, and has 8,200 clients.

10

39.     Defendant Graham also claims she has special access to $268 million in grant funds that she states Grant Bae will distribute to clients, for instance stating: "There's $268 million. It's going to be in conjunction with one of my financial teams that we're working with, and we're going to take that 268 and we're going to be able to disperse that throughout all of our great clients."

40.     To support their claims of "guaranteed" success, Defendants claim Grant Bae has a "top-tier team of grant writers," including "twelve grant writers who have a PhD," and that Grant Bae applies for numerous grants for which consumers are eligible.

41.     Moreover, Defendants claim to have "secured funding from" the Bill and Melinda Gates Foundation, the U.S. Small Business Administration, the Federal Communications Commission, and KKR, a global investment firm.

42.     In numerous instances, Defendants also represented to consumers that Grant Bae could and would apply on their behalf for funds, which would not have to be repaid, under the federal government's COVID-19 Economic Injury Disaster Loan ("EIDL") program, and which is designed to provide financial support to small businesses impacted adversely by COVID-19.

43.     Finally, Grant Bae purports to offer a "money-back guarantee." Defendant Graham said she "wholeheartedly stand[s] by the money back guarantee," which she said meant that Grant Bae presented "no risk" to prospective clients.

### Defendants Create a False Impression Among Consumers that They Have Been Awarded Grants and Will Receive Funds

44.     Defendants tell consumers interested in Grant Bae's grant service to schedule a 15-minute phone "consultation." Most recently Defendants advertised the fee for this call as $12. Defendants claim that during the consultation, consumers will learn what level of package they "qualify for."

45.     In some instances, consumers who pay for the initial phone consultation never receive the promised consultation at the appointed time and are unable to reschedule their consultation, yet their money is never refunded.

46.     Consumers who do connect with a Grant Bae representative and want to move forward select a package for which they are told they qualify.

47.     Defendants then provide these consumers with access to a portal where they are required to upload documentation, including articles of incorporation, business bank account information, the business's Employee Identification Number, and a mission statement describing what the money will be used for.

48.    Defendants bill consumers for the upfront fee, which they typically must pay within a certain number of days.

49.    Defendants typically inform consumers their portal will be updated within 45 to 60 days to notify them they have been awarded grants and it takes on average 90 days to receive a deposit.

50.    Through email communications and updating consumers' portals, Defendants represent to consumers they have been "awarded" grants for specific amounts of money.

51.    Once a consumer's portal shows a grant has been awarded, the consumer is asked to verify they want to move forward with the grant. If they say yes, the grant is considered "pending" deposit.

52.    Defendants promise consumers it is only a matter of time before a pending grant will be fulfilled. For instance, Defendant Graham stated in an August 2021 Instagram Live video, "Any time you are awarded a grant and it is the pending stage, the only thing that can stop that actually happening is whoever signed up for you to get that grant. So if you're just waiting for that grant to be deposited, rest assured your money is coming, is going to be deposited."

53.     However, Defendants never deposit pending funds into consumers' accounts because Defendants claim funds are pending when they have not, in fact, secured any such grants.

54.     When consumers ask Grant Bae about the source of the "grant" awards shown in their portals to see if they could contact the source to learn more information, Defendants refuse to disclose that information.

55.     By the time consumers learn no money has been deposited in their accounts, it is typically outside the 60-to-90-day window that most financial institutions set to allow chargebacks for fraudulent transactions.

***Defendants String Consumers Along with False Promises that Their Money Will Arrive Soon***

56.     To reassure consumers about the status of their promised funds, Defendants make numerous false claims regarding the number of consumers who they say received funding from Grant Bae and when additional deposits will be made.

57.     For instance, on August 10, 2021, Defendant Graham claimed in an Instagram Live video that 846 Grant Bae clients had been awarded grants on July 19, 2021, and that over 700 of those actually received funds within five to seven

14

days, which Defendants say is the typical amount of time after a grant's "closing" date for clients to receive funds.

58.     Defendant Graham also stated during that video, "if you are waiting on your July 19th grant, you better understand that that funding is coming. Do not be alarmed, do not be frustrated.... Everyone will be funded through the Grant Bae portal. I promise you that." Graham further stated, "[i]f you have a pending grant with Grant Bae, please rest assured that those funds will be deposited into your business bank account."

59.     Funds Defendant Graham promised in the August 10, 2021 video did not materialize.

60.     In the fall of 2021, Defendant Graham moved the goal posts again, asserting Grant Bae clients would receive a substantial amount of their promised funds by the end of 2021. For instance, in a September 2, 2021, Instagram Live video, Defendant Graham stated that by the end of the year, "70% of your contract is going to be fulfilled."

61.     Later, in a January 25, 2022, Instagram Live video, Defendant Graham claimed consumers would receive their promised grants by the end of the first quarter of 2022.

15

62.     Few, if any, consumers received the "guaranteed" funding Defendants promised.

63.     Using its own metrics, it is impossible for Grant Bae to deliver on its promises.

64.     As noted above, Grant Bae stated it employed twelve grant writers, claimed to have over 8,200 clients, and offered a base package guaranteeing it would obtain for each client at least 4 grants per year totaling at least $25,000 in grant funding per client. Even if every Grant Bae client purchased only the base package (many packages guaranteed more money), Grant Bae's twelve grant writers would have to write a minimum of 32,800 grants in a year in order to obtain the $205 million dollars in "guaranteed" grant money. In other words, over the course of the year, each grant writer would need to draft 2,733 grants at a minimum—that is an average of 52.5 grant applications each week per grant writer. With anything less than a 100% success rate, each grant writer would need to prepare even more applications to yield the "guaranteed" funds.

65.     Typically, it takes an experienced grant writer a minimum of 15-25 hours to write a grant application. Therefore, to write 52.5 grant applications per week, each grant writer would have to spend at least 788 hours per week writing grants, a physical impossibility given that there are only 168 hours in a week.

16

66.     Defendants have provided money to only a select few people—social media influencers with large followings of potential Grant Bae clients, and those closely related to them.

### *Defendants Deceptive Business Consulting Services*

67.     Grant Bae also offers programs such as the "Longevity Pilot," which it claims is a "six month course of action that will allow clients to have access to different factors to secure their SUCCESS," including legal, accounting, branding, and consulting services.

68.     Existing Grant Bae clients paid $199, and potential Grant Bae clients paid $299, for the opportunity to be selected for the Longevity Pilot.

69.     In fact, Defendants do not operate a Longevity Pilot program that provides consumers with access to legal, accounting, branding, and consulting services.

70.     When confronted by consumers who have lost money, Defendants either go silent or block those consumers from communicating with them on social media. Defendant Graham herself acknowledges this practice, noting in a video, "I'm going to be one thousand percentage authentic with you guys. I will block anyone and everyone who feels that they are investing their money in a scam."

71.     Additionally, Grant Bae routinely rejects consumers' refund requests.

72.   As a result of Defendants' conduct, consumers in numerous states have lost substantial sums of money, in some cases thousands of dollars each.

73.   Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe Defendants are violating or are about to violate laws enforced by the Commission, including that:

> a)   Defendants have continued to promise non-existent grant funding in exchange for payment;
>
> b)   Defendants continued their unlawful acts or practices despite knowledge of numerous complaints;
>
> c)   Defendants engaged in their unlawful acts and practices knowingly;
>
> d)   Defendant Graham has a history of dishonest conduct—stealing cash deposits from her former employer—that resulted in a three-year term of probation; and
>
> e)   Defendants continue to advertise grant writing services on their website.

## VIOLATIONS OF THE FTC ACT

74.   Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

75.   Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

18

76.     On January 31, 2020 the Secretary of Health and Human Services, pursuant to his authority under Section 319 of the Public Health Service Act, declared that COVID-19 had caused a public health emergency. As of the date of this filing, this public health emergency declaration remains in effect.

77.     For the duration of the ongoing COVID-19 public health emergency, the COVID-19 Consumer Protection Act makes it unlawful for any person, partnership, or corporation to engage in a deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. 45(a), that is associated with a government benefit related to COVID-19. 15 U.S.C. § 45 note (CCPA § 1401(b)(2)).

78.     Pursuant to Section 1401(c)(1) of the CCPA, 15 U.S.C. § 45 note (CCPA § 1401(c)(1)), a deceptive act or practice in violation of Section 5(a) of the FTC Act, as described in Section 1401(b) of the CCPA is treated as a violation of a rule defining an unfair or deceptive act or practice prescribed under Section 18(a)(1)(B) of the FTC Act, 15 U.S.C. § 57a(a)(1)(B). Section 1401(c)(2) of the CCPA, 15 U.S.C. § 45 note (CCPA § 1401(c)(2)), provides that the FTC "shall enforce" the CCPA in "the same manner, by the same means, and with the same jurisdiction, powers, and duties as though all applicable terms and provisions of the Federal Trade Commission Act (15 U.S.C. 41 et seq.) were incorporated into and

made a part of this Act." Section 19(a)(1) of the FTC Act, 15 U.S.C. § 57b(a)(1), provides that the FTC may commence a civil action against "any person, partnership, or corporation" who "violates any rule . . . respecting unfair or deceptive acts or practices." Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 1401(c)(1) of the CCPA authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the CCPA, including the rescission or reformation of contracts, and the refund of money.

79.     Pursuant to the Coronavirus Aid, Relief, and Economic Security Act of 2020 ("CARES Act"), Public Law 116-136 §§ 1107 & 1110, and the 2021 Consolidated Appropriations Act, Public Law 116-260 §§ 323 & 331-33, the U.S. Small Business Administration is authorized to provide eligible small businesses suffering from COVID-19-related economic loss with both repayable and nonrepayable loans and grants. These government benefits are provided through the COVID-19 Economic Injury Disaster Loan ("EIDL") program, the Targeted EIDL Advance and Supplemental Targeted Advance program, and related programs.

80.     Pursuant to the CARES Act, Public Law 116-136 §§1102 & 1106, the Small Business administration is authorized under the Paycheck Protection Program (PPP) to provide eligible businesses with forgivable loans designed to avoid payroll reductions during COVID-19-related economic uncertainty.

## Count I
### (By Plaintiff FTC)

81.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of consulting or grant writing services, Defendants represent, directly or indirectly, expressly or by implication, that:

a.     Defendants guarantee Grant Bae clients will receive grant funding;

b.     Defendants guarantee any minority-owned business will receive a minimum of $25,000 in grant funding;

c.     Defendants secured $32 million in grant funding between May 24, 2021, and August 24, 2021;

d.     Defendants secured $75 million in grant funding during calendar year 2021;

e.     most Grant Bae clients will receive funds within five to seven days of a grant's "closing" date;

f.     Defendants provide a "money-back guarantee";

g.     Defendants operate a Longevity Pilot program that provides consumers access to legal, accounting, branding, and consulting services; and

h.     Defendants will apply for EIDL funds for clients.

82.     In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 81:

a.     Grant Bae's clients do not receive grant funding;

b.    minority-owned businesses do not receive a minimum of $25,000 in grant funding;

c.    Defendants did not secure $32 million in grant funding between May 24, 2021, and August 24, 2021;

d.    Defendants did not secure $75 million in grant funding during calendar year 2021;

e.    most Grant Bae clients do not receive funds within five to seven days of a grant's "closing" date;

f.    Defendants do not provide consumers' money back when requested;

g.    Defendants do not operate a Longevity Pilot program that provides consumers access to legal, accounting, branding, and consulting services; and

h.    Defendants did not apply for EIDL funds for clients.

83.    On or after December 27, 2020 Defendants made the representations set forth in paragraph 81, which are associated with one or more government benefits related to COVID-19.

84.    The representations set forth in Paragraph 81 are false, misleading, or were not substantiated at the time the representations were made.

85.    Therefore, Defendants' representations as set forth in Paragraph 81 constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

86.     Section 501.204(1), Florida Statutes, declares that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

87.     Section 501.203(8), Florida statutes, defines "trade or commerce" as:

the advertising, soliciting, providing, offering, or distributing, whether by sale, rental or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

88.     The provisions of FDUTPA shall be "construed liberally" to promote and "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce." Section 501.202, Florida Statutes.

89.     A person that willfully engages in a deceptive or unfair act or practice is liable for a civil penalty of Ten Thousand Dollars ($10,000) for each such violation, pursuant to Section 501.2075, Florida Statutes, and Fifteen Thousand Dollars ($15,000) for each violation victimizing a senior citizen or a person who has a disability or that is directed at a military servicemember, pursuant to Section

23

501.2077, Florida Statutes. Willful violations occur when a person knew or should have known that the conduct in question was deceptive or unfair or prohibited by rule, pursuant to Section 501.2075, Florida Statutes."

## <u>Count II</u>
### (By Plaintiff Florida Attorney General)

90.     Plaintiff, State of Florida, adopts and incorporates herein, and re-alleges Paragraphs 11 through 73 above, which allegations are incorporated as if set forth herein, and further alleges:

91.     In the course of Defendants' trade or commerce, Defendants have committed acts or practices that are unfair or deceptive in violation of the FDUTPA.

92.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of services related to grant writing and business consulting services, including through the means described in Paragraphs 11 through 73 above, Defendants misrepresent, directly or indirectly, expressly or by implication, that:

a.     Defendants guarantee Grant Bae clients will receive grant funding;

b.     Defendants guarantee any minority-owned business will receive a minimum of $25,000 in grant funding;

c.     Defendants secured $32 million in grant funding between May 24, 2021, and August 24, 2021;

d.   Defendants secured $75 million in grant funding during calendar year 2021;

e.   most Grant Bae clients will receive funds within five to seven days of a grant's "closing" date;

f.   Defendants provide a "money-back guarantee";

g.   Defendants operate a Longevity Pilot program that provides consumers access to legal, accounting, branding, and consulting services; and

h.   Defendants will apply for EIDL funds for clients.

93.   Defendants' representations set forth in Paragraph 92 are false and misleading and were not substantiated at the time that the representations were made.

94.   The making of the false representations set forth in Paragraph 92 constitute a deceptive act or practice in violation of Section 501.204(1), Florida Statutes.

95.   Graham is personally liable for the unlawful acts and practices of Corporate Defendant Grant Bae as Graham has the authority and power to control or direct the conduct at issue herein and/or actually participated in and directed the conduct at issue herein.

96.   Grant Bae and Graham are subject to civil penalties for willful violation of FDUTPA in the amount of Ten Thousand Dollars ($10,000) for each violation

pursuant to Section 501.2075, Florida Statutes, and Fifteen Thousand Dollars ($15,000) for each violation that victimized or attempted to victimize a senior citizen or person who has a disability pursuant to Section 501.2077, Florida Statutes.

97.     The above-described acts and practices of Grant Bae and Graham have injured and will likely continue to injure and prejudice the public.

98.     The acts and practices of Grant Bae and Graham as set forth herein are misleading or deceptive and likely to mislead consumers acting reasonably, and consumers within the State of Florida and elsewhere were actually misled by the acts and practices of Defendants Grant Bae and Graham recited herein.

99.     Defendants Grant Bae and Graham have willfully engaged in the acts and practices alleged herein when they knew or should have known that such acts and practices were unfair or deceptive or otherwise prohibited by law.

100.    Unless Defendants Grant Bae and Graham are permanently enjoined from engaging further in the acts and practices complained of herein, Defendants' actions will result in irreparable injury to the public for which there is no adequate remedy at law.

## **CONSUMER INJURY**

101.    Consumers are suffering, have suffered, and will continue to suffer substantial injury as the result of Defendants' violations of the FTC Act, the CCPA,

and the FDUTPA. Absent injunctive relief and other relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, the FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, and Section 1401(c)(1) of the CCPA, and the Court's own equitable powers; and the State of Florida, pursuant to the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes, and the Court's own equitable powers, respectfully request that the Court:

A.    Enter a permanent injunction to prevent future violations of the FTC Act and the CCPA by Defendants in accordance with Section 13(b) of the FTC Act, 15 U.S.C. § 53(b);

B.    Grant preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions; an order freezing Defendants' assets; the appointment of a receiver; immediate access to Defendants' business premises and documents; and an accounting of assets;

C.    Award monetary and other relief within the Court's power to grant, including, but not limited to, rescission or reformation of contracts, the refund of

money, the return of property, public notification, or other relief necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and the CCPA in accordance with Section 19 of the FTC Act, 15 U.S.C. § 57b;

D.      Award Plaintiff, State of Florida, Final Judgment against Defendants, jointly and severally, ordering full restitution to consumers harmed by Defendants' unfair and deceptive acts in violation of FDUTPA; disgorgement; repatriation of assets to satisfy any judgment; and any other relief deemed appropriate pursuant to Section 501.207(3), Florida Statutes;

E.      Assess against Defendants, jointly and severally, civil penalties in the amount of Ten Thousand Dollars ($10,000) for each violation of FDUTPA in accordance with Section 501.2075, Florida Statutes, and Fifteen Thousand Dollars ($15,000) for each violation that victimized or attempted to victimize a senior citizen or person who has a disability in accordance with Section 501.2077, Florida Statutes;

F.      Permanently enjoin Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, who receive actual notice of the injunction, from engaging in the acts and practices in violation of FDUTPA as specifically alleged above and any similar acts and practices relating to the relaying of false or misleading statements to consumers;

G. Award Plaintiff, State of Florida, reasonable attorney's fees and costs pursuant to the provisions of Sections 501.2105 and 501.2075, Florida Statutes, and as otherwise allowable by applicable statutes or law;

H. Award Plaintiff, State of Florida, such other and further relief as the Court deems just and proper, including all equitable relief allowed pursuant to Section 501.207(3), Florida Statutes; and

I. Award any additional relief as the Court determines to be just and proper.

Respectfully submitted,

Dated: June, 13, 2022

Miriam Lederer
Daniel Wilkes
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Mail Drop CC-9528
Washington, D.C. 20580
(202) 326-2975 (Lederer), -3679 (Wilkes)
mlederer@ftc.gov; dwilkes@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

ASHLEY MOODY
Attorney General State of Florida

Dated: June, 13, 2022

/s/ Carol E.A. DeGraffenreidt
Carol E.A. DeGraffenreidt
Office of the Attorney General
Consumer Protection Division
1300 Riverside Boulevard, Suite 405
Jacksonville, FL   32207
Carol.DeGraffenreidt@myfloridalegal.com

Attorney for Plaintiff
OFFICE OF THE ATTORNEY GENERAL
STATE OF FLORIDA DEPARTMENT OF
LEGAL AFFAIRS