UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and<br><br>OFFICE OF THE ATTORNEY GENERAL,<br>STATE OF FLORIDA,<br>DEPARTMENT OF LEGAL AFFAIRS,<br><br>    Plaintiffs,<br><br>v.<br><br>TREASHONNA P. GRAHAM, et al.,<br><br>    Defendants. | Case No. 3:22-cv-655-MMH-JBT<br><br>**PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENTS AS TO RELIEF DEFENDANTS RFNF TRUCKING LLC AND A POT AND TWO WINDOWS LLC** |

## INTRODUCTION

Plaintiffs, the Federal Trade Commission ("FTC") and the Office of the Attorney General, State of Florida, Department of Legal Affairs ("Florida Attorney General"), respectfully move this Court for entry of judgment by default against Relief Defendants RFNF Trucking LLC and A Pot and Two Windows LLC ("Defaulting Relief Defendants"), pursuant to Federal Rule of Civil Procedure 55(b)(2). Defaulting Relief Defendants were served with a summons and complaint, but failed to answer or otherwise defend, resulting in the Clerk's entry of default against each company. Plaintiffs have settled with the other defendants in this matter—Defendants Treashonna P. Graham and C Lee Enterprises LLC ("C Lee Enterprises") (collectively, "Defendants") and Relief Defendant Joey L. Williams. Plaintiffs' well-pled allegations establish Defendants' and Defaulting Relief

1

Defendants' liability. Plaintiffs have also proved the amount of consumer harm caused by Defendants and the unlawful benefits Defaulting Relief Defendants received to which they had no legitimate entitlement. Therefore, Plaintiffs now respectfully request this Court enter the attached proposed Default Final Order for Permanent Injunction, Monetary Judgment, And Other Relief as to Relief Defendants RFNF Trucking LLC and A Pot and Two Windows LLC.

## I.      PROCEDURAL HISTORY

On June 13, 2022, Plaintiffs filed their Complaint for Permanent Injunction and Other Equitable Relief pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b; Section 1401(c)(1) of the COVID-19 Consumer Protection Act of the 2021 Consolidated Appropriations Act, Pub. L. No. 116-260, 134 Stat. 1182, Title XIV, § 1401(c)(1), 15 U.S.C. § 45 note (Prohibiting Deceptive Acts or Practices in Connection With the Novel Coronavirus) ("COVID-19 Consumer Protection Act" or "CCPA"); and the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes ("FDUTPA"). (Doc. 1). The Court granted Plaintiffs' *Ex Parte* Motion for Temporary Restraining Order on June 6, 2022, halting Defendants' operations and freezing their assets. On July 15, 2022, the Court entered the parties' stipulated Preliminary Injunction, which kept in place key features of the TRO. (Docs. 19 and 40).

On August 8, 2022, Plaintiffs filed their First Amended Complaint ("Amended Complaint"), naming Joey L. Williams, RFNF Trucking LLC, and A Pot and Two Windows LLC as Relief Defendants. (Doc. 48). The Amended

Complaint alleges Defendants violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); Section 1401(b)(2) of the CCPA; and the FDUTPA, Chapter 501, Part II, Florida Statutes by targeting minority-owned small businesses with false guarantees they will receive grant funding and business consulting services or receive their money back. Induced by these promises, small business owners paid Defendants thousands of dollars, but received no grants, no business consulting services, and no refunds. The Amended Complaint further alleges Defaulting Relief Defendants received funds or assets resulting from Defendants' deceptive acts or practices and had no legitimate claim to those funds or assets.

In compliance with Federal Rule of Civil Procedure 4, Plaintiffs served Defaulting Relief Defendants with the Amended Complaint. (Docs. 53-54, 57). On October 4, 2022, after the Defaulting Relief Defendants failed to timely answer the Amended Complaint, Plaintiffs moved for entry of clerk's default against them. (Doc. 62). The clerk entered defaults against these parties on October 6, 2022. (Docs. 64-65).[1]

Contemporaneously with filing the present motion for default judgment against Defaulting Relief Defendants, the parties have filed stipulated final orders as to Defendants Graham, Defendant C Lee Enterprises, and Relief Defendant Williams. (Doc. 69).

---

[1] By letters dated July 22, 2022, and October 26, 2022, Receiver Mark Bernet expanded the Receivership to include RFNF Trucking LLC and A Pot and Two Windows LLC, pursuant to his authority under the Preliminary Injunction. (*See* Attachs. 7 and 8 to Wilkes Decl.).

## II.   DEFENDANTS' UNLAWFUL GRANT WRITING AND BUSINESS CONSULTING SCAM

As alleged in the Amended Complaint, beginning in at least October of 2020, Defendants C Lee Enterprises and Treashonna Graham, who refers to herself as "The Grant Bae," marketed grant writing and business consulting services to minority-owned small businesses through the Grant Bae brand.[2] (Doc. 48 at ¶ 19). Defendant Graham falsely held herself out to potential clients as a grant writing expert, with eight years of experience in that field. (Doc. 48 at ¶ 25). In reality, she had little to no grant writing experience. (Doc. 48 at ¶ 28).

In the summer of 2020, Defendant Graham formed C Lee Enterprises. (Doc. 48 at ¶ 30). A month later C Lee Enterprises was approved for an $8,013 loan under the Paycheck Protection Program ("PPP"), a government benefit program designed to stabilize the payroll of businesses impacted by COVID-19. (*Id.*). Two weeks later, Defendant Graham was individually approved for a $22,990 PPP loan as an "independent contractor." (Doc. 48 at ¶ 31). Defendant Graham used these PPP funds to set up Grant Bae, which she publicized through her website, social media channels, and in-person gatherings. (Doc. 48 at ¶¶ 20, 26-27, 32, 34).

Defendants guaranteed small business owners that Grant Bae would secure certain amounts of grant funding for them, telling potential clients that *every*

---

[2] A more detailed recitation of the legal and factual support for Plaintiffs' case is presented in their motion for a TRO (Doc. 5) and supporting memorandum and exhibits (Doc. 6), and their supplemental memorandum in support and accompanying exhibit (Doc. 24).

4

minority-owned small business qualified for at least $25,000 in grant funds. (Doc. 48 at ¶ 37). Defendants claimed that Grant Bae's "Basic" package, which cost $1,799, would yield at least $25,000 in grant funds; its "Standard" package ($2,699) would yield at least $50,000; its "Premium" package ($4,499) would yield at least $100,000; and its "Elite" package ($6,999) would yield at least $250,000 in grant funds. (Doc. 48 at ¶ 38).

Defendants assured consumers there was "no risk" because Grant Bae had a money-back guarantee. (Doc. 48 at ¶ 46). Defendants further told consumers that they will typically receive grant funding within five to seven days from when their grants "close." (Doc. 48 at ¶ 46). Defendants conveyed to consumers that they had been "awarded" grants, but consumers did not receive the promised funds—much less within five to seven days of the "closing" date. (Doc. 48 at ¶¶ 53, 56, 65). This was because Grant Bae had not, in fact, secured such grants. (Doc. 48 at ¶ 56). Moreover, Defendants routinely rejected consumers' requests for refunds, despite the purported money-back guarantee. (Doc. 48 at ¶ 74).

Despite her failure to secure grants for consumers, Defendant Graham falsely told consumers via videos on Grant Bae's Instagram page that Grant Bae secured $32 million in funding during the three months preceding August 24, 2021, and $75 million during calendar year 2021. (Doc. 48 at ¶ 41)

Defendants also represented to consumers that Grant Bae would apply on their behalf for funds, which would not have to be repaid, under the federal government's COVID-19 Economic Injury Disaster Loan ("EIDL") program, which

5

is designed to provide financial support to small businesses impacted adversely by COVID-19. (Doc. 48 at ¶ 45). In reality, Defendants never applied for EIDL funds on consumers' behalf. (Graham's Resp. to Pls' Interrog. 10, Attach. 1 to Wilkes Decl.).

Defendants also offered to consumers the "Longevity Pilot" program, which they claimed was a "six month course of action that will allow clients to have access to different factors to secure their SUCCESS," including legal, accounting, branding, and consulting services. (Doc. 48 at ¶ 70). Despite Grant Bae clients paying hundreds of dollars for the opportunity to participate in this program, Defendants never provided it. (Doc. 48 at ¶¶ 71-72).

As the pressure grew for answers and consumer complaints mounted, Defendants either went silent or blocked those consumers from communicating with them on social media. (Doc. 48 at ¶ 73). Defendant Graham herself acknowledges this practice, noting in a video, "I'm going to be one thousand percentage authentic with you guys. I will block anyone and everyone who feels that they are investing their money in a scam." (*Id.*).

As a result of Defendants' conduct, consumers in numerous states have lost substantial sums of money, in some cases thousands of dollars each. (Doc. 48 at ¶ 75). Based on Defendants' and third-party business records, FTC forensic accountant Roshni Agarwal calculates the net consumer loss to be $2,124,203.46, C Lee Enterprises' gross receipts less refunds and chargebacks. (Agarwal Decl. ¶ 9). Some

of these funds went to the Defaulting Relief Defendants, as explained in Section III.B. below. (Doc. 48 at ¶ 76).

Plaintiffs' Amended Complaint further alleges that Grant Bae's clients do not receive grant funding; minority-owned businesses do not receive a minimum of $25,000 in grant funding; Defendants did not secure $32 million in grant funding between May 24, 2021, and August 24, 2021; Defendants did not secure $75 million in grant funding during calendar year 2021; most Grant Bae clients do not receive funds within five to seven days of a grant's "closing" date; Defendants do not provide consumers' money back when requested; and Defendants do not operate a Longevity Pilot program that provides consumers access to legal, accounting, branding, and consulting services, and Defendants did not apply for EIDL funds for clients. (Doc. 48 at ¶ 86).

### III. PLAINTIFFS ARE ENTITLED TO DEFAULT JUDGMENTS AGAINST THE DEFAULTING RELIEF DEFENDANTS.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. Following the entry of a clerk's default, the Court may enter a default judgment against a properly served defendant who has failed to appear or otherwise defend. Fed. R. Civ. P. 55(b)(2); *see also DirecTV, Inc. v. Griffin*, 290 F. Supp. 2d 1340, 1343 (M.D. Fla. 2003). By defaulting, a defendant "admits the plaintiff's well-pleaded allegations of fact, . . . and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*,

561 F.3d 1298, 1307 (11th Cir. 2009). The Eleventh Circuit has "interpreted the standard as being akin to that necessary to survive a motion to dismiss for failure to state a claim" and has noted that "a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015).

### A. Plaintiffs' Well-Pled Allegations Establish that Defendants Violated the FTC Act, the CCPA, and FDUTPA.

Section 5 of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45. To prove deception, the FTC "must establish that (1) there was a representation; (2) the representation was likely to mislead customers acting reasonably under the circumstances, and (3) the representation was material." *FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003) (citing *FTC v. World Travel Vacation Brokers Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988)), and *FTC v. Atlantex Assocs.*, 1987 WL 20384 (S.D. Fla. 1987), *aff'd*, 872 F.2d 966 (11th Cir. 1989)).

As set forth above, in the Amended Complaint, and in the TRO motion and supporting materials, Defendants made numerous false representations aimed at inducing consumers to purchase Grant Bae's services, including: guaranteeing them certain levels of grant funding; claiming to have secured tens of millions of dollars in grant funding; promising clients they would receive grant funds within five to seven days of a grant's "closing" date; representing that Grant Bae would provide refunds when requested; offering the Longevity Pilot program; and telling consumers that Grant Bae would apply for EIDL funds on their behalf.

These representations were likely to mislead customers acting reasonably under the circumstances. In analyzing this prong, the Court examines the "material implication in the entirety" of Defendants' marketing. *FTC v. Peoples Credit First, LLC*, 244 F. App'x 942, 944 (11th Cir. 2007); *see also FTC v. Direct Bens. Grp., LLC*, 2013 WL 3771322, at *15 (M.D. Fla. 2013) (examining "net impression" of website experience). There is no "extravagant claim" defense, and a company will be liable for any misleading interpretation. *FTC v. Washington Data Res.*, 856 F. Supp. 2d 1247, 1273 (M.D. Fla. 2012), *aff'd*, 704 F.3d 1323 (11th Cir. 2013) (collecting cases for these two propositions). Additionally, "[o]nly a tendency to deceive is required; actual consumer deception is unnecessary." *Id.* at 1273 (citing *Tashman*, 318 F.3d at 1283 and *Trans World Accounts Inc. v. FTC*, 594 F.2d 212, 214 (9th Cir. 1979)). Here, the net impression created by Defendants claims was that, in exchange for payment to Grant Bae, small businesses would receive sizable grants as well as business consulting services. This impression was false. Despite handing over thousands of dollars each, clients received neither grants nor consulting services.

Finally, Defendants' deceptive claims were material to consumers. "An express claim used to induce the purchase of a service is presumed material." *Washington Data Res.*, 856 F. Supp. 2d at 1272-73 (citing *FTC v. Transnet Wireless Corp.*, 506 F. Supp. 2d 1247, 1267 (S.D. Fla. 2007) and *In re Thompson Med. Co.*, 104 F.T.C. 648, 816 (1984), *aff'd*, 791 F.2d 189 (D.C. Cir. 1986)). Here, the claims were not only made expressly on Grant Bae's website and in Graham's social media presentations and thus presumptively material, but they are also claims that go to the

9

heart of the promised services and were central to consumers' decisions to pay Defendants thousands of dollars.

Moreover, pursuant to the CCPA, "a deceptive act or practice in or affecting commerce in violation of Section 5(a)" of the FTC Act "that is associated with . . . a government benefit related to COVID-19," is "treated as a violation of a rule defining an unfair or deceptive act or practice prescribed under section 18(a)(1)(B) of the [FTC Act]." Here, Defendants' conduct is "associated with" a COVID-19 related government benefit in two ways. First, Defendant Graham used funds from PPP loans issued to both her and her company to start and operate the Grant Bae scam. Second, Defendants falsely represented that they would apply for EIDL grants on behalf of consumers.

Because these violations are statutorily treated as rule violations, the FTC can obtain monetary relief for victims pursuant to Section 19 of the Act. Specifically, Section 19 allows the court to award "such relief as the court finds necessary to redress the injury to consumers . . . resulting from the rule violation." 15 U.S.C. § 57b(b). Such relief includes the refund of monies. Here, Defendants' unlawful conduct generated significant ill-gotten gains for which consumers are entitled to redress.

In addition, under the FDUTPA, liability may be established if there is a representation or omission that is likely to mislead a consumer acting reasonably

under the circumstance and which "offends establish public policy."[3] Here, the same misrepresentations that violate the FTC Act also violate FDUTPA. Courts may award monetary remedies, including but not limited to restitution and disgorgement, for FDUPTA violations. Section 501.207(3), Florida Statutes.

### B. Plaintiffs' Well-Pled Allegations and Evidence Establish that Defaulting Relief Defendants are Liable for Proceeds Received as a Result of Defendants' Unlawful Conduct.

A relief defendant is an individual or entity who "(1) has received ill-gotten funds, and (2) does not have a legitimate claim to those funds." *S.E.C. v. Founding Partners Cap. Mgmt.*, 639 F. Supp. 2d 1291, 1293 (M.D. Fla. 2009) (citing *SEC v. George*, 426 F.3d 786, 798 (6th Cir.2005)). Both RFNF Trucking and A Pot and Two Windows easily satisfy this test.

#### 1. RFNF Trucking LLC

Bank records reflect that, between December 29, 2020, and October 21, 2021, Defendant Graham withdrew over $150,000 from her C Lee Enterprises bank account at the Best Bet Jacksonville casino. (Agarwal Decl. ¶8). During her deposition, Defendant Graham testified that in October 2021 she gifted $115,000 of

---

[3] FDUTPA makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." Chapter 501, Part II, Florida Statutes. In construing this Section, the Florida Legislature has declared that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45 (a)(1) as of July 1, 2017." § 501.204(2). Fla. Stat. (2015); *see also FTC v. Info. Mgmt. Forum, Inc.*, 2013 U.S. Dist. LEXIS 91242, at *5 (M.D. Fla. June 28, 2013) ("Conduct that constitutes a 'deceptive act or practice' or an 'unfair act or practice' under the FTC Act is a violation of FDUTPA.").

those funds to Relief Defendant Joey Williams so he could start a trucking business.[4] (Graham Dep. vol. I at 136-37, Attach. 2 to Wilkes Decl.) In his deposition, Williams acknowledged receiving the $115,000 and using that money to fund RFNF Trucking. (Williams Dep. at 140, 184-85, Attach. 4 to Wilkes Decl.; Ex. 17 to Williams Dep., Attach. 5 to Wilkes Decl.). Accordingly, Relief Defendant RFNF Trucking LLC is jointly and severally liable for the $115,000 received from Graham as they were ill-gotten funds to which it has no entitlement.

### 2. A Pot and Two Windows LLC

Relief Defendant Williams also controls Defaulting Relief Defendant A Pot and Two Windows LLC. (Williams Dep. at 101, 104, Attach. 4 to Wilkes Decl.; Ex. 15 to Williams Dep., Attach. 6 to Wilkes Decl.). During her deposition, Defendant Graham testified that she directed consumers' payments for Grant Bae services to A Pot and Two Windows LLC's payment processing accounts. (Graham Dep. vol I at 108-110, Attach. 2 to Wilkes Decl.). Forensic accountant Agarwal calculates this amount to be $39,009.58. (Agarwal Decl. ¶ 12). Defendant Graham testified that such funds were sent to A Pot and Two Windows LLC because payment processing accounts associated with C Lee Enterprises were not functioning. Because these

---

[4] Later in her deposition, which took place on a later date, Defendant Graham was asked, "What happened to the money that was transferred to RFNF Trucking, $115,000?" She invoked her Fifth Amendment right against self-incrimination. (Graham Dep. vol. II at 184, Attach. 3 to Wilkes Decl). The Court may draw appropriate adverse inferences based on Graham's invocation. *See United States v. Two Parcels of Real Prop. Located in Russell Cnty., Ala.*, 92 F.3d 1123, 1129 (11th Cir. 1996) (allowing "adverse inference against the parties to a civil action refusing to testify on Fifth Amendment grounds").

funds were ill-gotten gains to which A Pot and Two Windows LLC was not entitled, it is liable for them as a relief defendant.

## IV. CONCLUSION

Plaintiffs respectfully request that the Court grant their motion and enter default judgments against the Defaulting Relief Defendants.

Respectfully submitted,

Dated: November 22, 2022

/s/ Daniel T. Wilkes
Miriam Lederer
Daniel T. Wilkes
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Mail Drop CC-9528
Washington, D.C. 20580
(202) 326-2975 (Lederer), -3679 (Wilkes)
mlederer@ftc.gov; dwilkes@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

ASHLEY MOODY
Attorney General State of Florida

Dated: November 22, 2022

/s/ Carol E.A. DeGraffenreidt
Carol E.A. DeGraffenreidt
Office of the Attorney General
Consumer Protection Division
1300 Riverside Boulevard, Suite 405
Jacksonville, FL  32207
Carol.DeGraffenreidt@myfloridalegal.com

Attorney for Plaintiff
OFFICE OF THE ATTORNEY GENERAL
STATE OF FLORIDA DEPARTMENT OF
LEGAL AFFAIRS

## COMPLIANCE WITH LOCAL RULE 3.01(G)

Plaintiffs have met and conferred with counsel for Defendants Treashonna P. Graham and C Lee Enterprises, and they do not oppose this motion.

## CERTIFICATE OF SERVICE

I certify that, on November 22, 2022, I electronically filed the forgoing document with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

Robert Eckard
*Counsel for Defendants Treashonna P. Graham and C Lee Enterprises LLC*

Mark J. Bernet
*Receiver for C Lee Enterprises LLC*

I certify that I served the forgoing document by FedEx, no signature required, to the following non-CM/ECF participants:

Joey L. Williams
135 NE Mannon Ct.
Lake City, Florida 32055
*Relief Defendant*

RFNF Trucking LLC
c/o Joey L. Williams, Manager
135 NE Mannon Ct.
Lake City, Florida 32055

and

RFNF Trucking LLC
c/o United States Corp. Agents, Inc., registered agent
5575 S. Semoran Blvd., Ste. 36
Orlando, FL 32822
*Relief Defendant*

A Pot and Two Windows LLC
c/o Joey L. Williams, registered agent
135 NE Mannon Ct.
Lake City, Florida 32055
*Relief Defendant*

I certify that I also served the forgoing document to:

jw8985@gmail.com (the email address through which Joey L. Williams has been communicating with Plaintiffs' counsel).

/s/ Daniel T. Wilkes
Daniel T. Wilkes
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Mail Drop CC-9528
Washington, D.C. 20580
(202) 326-3679
dwilkes@ftc.gov